IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30010 |
| | ) | (Chapter 11) |
| RED RIVER SUBS, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MOTION FOR LEAVE TO PAY CERTAIN PRE-PETITION EMPLOYEE WAGES**

Comes now Red River Subs, Inc. ("Red River Subs" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 105 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and moves this Honorable Court for leave to pay certain pre-petition employee wages, and in support thereof state as follows:

**I.    Introduction**

The Debtor operates a group of local Erbert and Gerbert's restaurants, relying on a devoted team of hardworking employees to prepare food, interface with customers, keep premises clean, and ensure patrons are embraced by a fun and inviting environment. As Red River Subs now looks to reorganize through the bankruptcy process, retention of the majority (but not whole) of these employees will be absolutely essential. And the Debtor thusly petitions for leave to pay pre-petition wages, for the period spanning January 9, 2024 through January 13, 2024, to all employees excepting the Debtor's equity holder.

**II.    Standard**

Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor, "after notice and a hearing," to use or sell "property of the estate," outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Honorable Court, in turn, has broad authority to "issue any order, process,

1

or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

### III.  Argument: It is Necessary to Pay Employee Wages

The goal of this case – consistent with the outward objectives of Chapter 11 of Title 11 of the United States Code – is to reorganize the Debtor while Red River Subs continues to operate as a going concern in the Fargo/Moorhead community. A failure to timely pay wages would work demonstrable frustration upon this goal by (i) inflicting undue economic burden upon the entity's workforces; (ii) compromising employee morale in a business that is intensively customer-facing; (iii) risking staff attrition; and (iv) inviting derogatory gossip, and the fomenting of rumors, in the community. Paying these obligations in a timely manner, however, would work only the slightest burden upon the Debtor while equally reinforcing to employees that a Chapter 11 filing is not synonymous with liquidation or demise.

As observed by the United States Bankruptcy Court for the Southern District of New York, a debtor is permitted to expend funds outside the ordinary course of business, provided such be pegged to some articulable business justification:

> A bankruptcy court is empowered pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under § 363(b).

2

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986); *In re Baldwin–United Corp.*, 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984)).

The United States Bankruptcy Court for the District of Colorado has more specifically touched upon the justification for paying the pre-petition wages of employees at the outset of a bankruptcy case:

> The Debtor presented evidence that the failure to pay employees "would seriously undermine the morale and loyalty" of its employees and would jeopardize reorganization efforts. This stands to reason. If employees are not paid, "they will leave." And even if employees remain with the Debtor notwithstanding the non-payment of prepetition wages and benefits, "it is probable that their work would be affected by their loss of income." The Court finds that the failure to pay the Debtor's employees their prepetition wages and benefits likely would jeopardize the Debtor's reorganization process.

*In re Escalera Res. Co.*, 2015 WL 7351396, *4 (Bankr. D. Colo. 2015) (quoting *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004); *In re Tusa–Expo Holdings, Inc.*, 2008 WL 4857954, *3 (Bankr. N.D. Tex. 2008)).

Simplifying matters in this case, each of the employee wages proposed to be paid is well below the statutory cap set forth in Section 507(a)(4) of Title 11 of the United States Code and, as such, would give rise to a priority claim if not timely paid. That provision expressly prioritizes claims for "wages, salaries, or commissions … earned by an individual," to the extent that such (i) not exceed $15,150.00 and (ii) the claim accrued "within 180 days before the date of the filing of the petition…" 11 U.S.C. § 507(a)(4).

The Debtor pays wages on a biweekly basis, with payment coming one week in arrears. The payroll for the period ending January 8, 2024 was fully processed pre-petition and the Debtor regards that obligation as having been paid pre-petition since the Debtor would not be able to unwind the authorization post-petition and since the Debtor formally signed off on a third party

3

processing the subject monies pre-petition (as is the Debtor's standard procedure every time payroll is made). Thus, while the payroll period ending January 8, 2024 beget wages that have not yet been debited from the Debtor's bank account, (i) the Debtor authorized such debit, in the ordinary course of business, several days before this case was filed; (ii) the ACH process underlying such payment has already been commenced; and (iii) it is reasonably anticipated such monies will be debited from the Debtor's operating account prior to the open of business on Tuesday, January 16, 2024 – the first business day post-petition.

This, however, leaves the wages that accrued between January 9, 2024 and January 13, 2024, which are very much pre-petition obligations and for which payroll has not yet been processed. Based on prior payrolls, and pro-rating such that 5/14 of a normal payroll obligation is categorized as being pre-petition, the Debtor reasonably estimates these obligations will be broken down as follows:

|  | Total | Equity | Bismarck | Net |
|---|---|---|---|---|
| Earnings | $8,910.76 | $1,098.90 | $1,939.26 | $6,971.50 |
| Employee Taxes | $1,314.03 | $240.67 | $243.82 | $1,070.21 |
| Employer Taxes | $743.28 | $78.51 | $165.61 | $577.66 |
| Deductions | $862.75 | $173.93 | $86.48 | $776.27 |

The "Total" column on the foregoing table is the last company-wide payroll sum, pro-rated for 5/14ths of a work period. The "Equity" column represents the portion of wages due to Todd Beedy ("Mr. Beedy"), the Debtor's sole equity holder. The "Bismarck" column correlates to the portion of wages due to employees working at the Debtor's Bismarck location, which is being closed. And the "Net" column is computed as the total obligation less those monies due to Mr. Beedy and the Bismarck employees.

Mr. Beedy has agreed to not seek emergency payment of his wages for the five day period. Inasmuch as he is the Debtor's sole owner and president, he does not feign to have his morale

4

compromised by needing to defer his claim until plan payments are made, nor does he represent any direct attritional risk. Mr. Beedy is certainly not walking off the job over $1,098.90.

The Bismarck employees invite a more complicated dilemma. These are persons who were loyal and quality employees of the Debtor, who showed up to work and did their jobs, and who had no notion that a bankruptcy – coupled with a closure of their shop – was imminent. They are, in many regards, the employees who are now the neediest, being the persons who have been separated from their jobs. And they are, thusly, also the employees who may have the strongest equitable argument for the prompt payment of their priority claims.

The Debtor would like to timely pay the Bismarck employees and has funds sufficient to do so. The Debtor believes doing so might foster innate goodwill. And the Debtor wants, quite badly, to look out for its separated employees. So, to the extent this Honorable Court will permit those wages to be paid pursuant to Section 105 of Title 11 of the United States Code, the Debtor asks that such an order be entered. But, equally, the Debtor is cognizant that there is not a good faith argument to be made concerning the potential attrition of these employees (who have already been separated) or about their forward-looking workplace morale (since they are no longer employed).

The Debtor does not operate a large, multi-national business and Red River Subs' employees are not compensated pursuant to agreements with stock options, golden parachutes, and annual bonuses that mirror the price of a vacation home. These are, rather, hardworking people who make an honest and market-appropriate wage. Failing to timely pay those wages would not only risk financial harm to loyal workforces but, too, would prove potentially incendiary to the Debtor's efforts to reorganize for the benefit of all creditors.

**IV.     Conclusion**

WHEREFORE, the Debtor respectfully pray this Honorable Court (i) permit the Debtor to pay the pre-petition wages of all non-insider employees; (iii) permit such wages to be paid in accord with the Debtor's normal payroll practices, and without delay, pursuant to the allowances of Federal Rule of Bankruptcy Procedure 6003; and (iii) afford such other and further relief.

                                                                            Respectfully Submitted,

Dated: January 14, 2024                By:    /s/ Maurice B. VerStandig
                                                                 Maurice B. VerStandig, Esq.
                                                                 The Dakota Bankruptcy Firm
                                                                 1630 1st Avenue N
                                                                 Suite B PMB 24
                                                                 Fargo, North Dakota 58102-4246
                                                                 Phone: (701) 394-3215
                                                                 mac@dakotabankruptcy.com
                                                                 *Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of January, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

                                                                              /s/ Maurice B. VerStandig
                                                                              Maurice B. VerStandig