IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30010 |
| | ) | (Chapter 11) |
| RED RIVER SUBS, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MOTION TO REJECT OFFICE LEASE AGREEMENT BY AND
BETWEEN RED RIVER SUBS, INC. AND 931 ON 9TH LLC**

Comes now Red River Subs, Inc. (the "Debtor" or "Red River Subs"), pursuant to Section 365(a) of Title 11 of the United States Code (the "Bankruptcy Code"), as well as Federal Rule of Bankruptcy Procedure 6006, and moves this Honorable Court for leave to reject the commercial lease agreement between the Debtor and 931 on 9th LLC (the "Landlord"), and in support thereof states as follows:

### I.    Introduction

The Debtor is an Erbert and Gerbert's restaurant franchisee, operating four locations throughout North Dakota and Minnesota: two in Fargo, one in Moorhead, and one in Bismarck. The Debtor believes the Moorhead location, together with one of the Fargo locations, to be profitable in nature. The Debtor believes the other Fargo location may prove profitable, depending on how certain aspects of this bankruptcy proceeding progress. But the Debtor does not believe the Bismarck location is capable of being operated profitably, especially with the geographic distance of Bismarck – relative to the other three restaurants – inviting certain managerial inefficiencies. And so the Debtor has made the difficult and sober decision to close this one restaurant immediately following the filing of this case.

The Erbert and Gerbert's restaurant in Bismarck did not open for business on Saturday, January 13, 2024, and the whole of that establishment's staff – excepting the Debtor's president

1

(who also runs the other three restaurants) – was separated from their employment. The Debtor has moved the perishable inventory from this locale to other Red River Subs restaurants, to ensure no food waste is occasioned by the closure, and the Debtor has also stripped the Bismarck location of all in-store cash and various core pieces of electronic equipment (including point-of-sale systems).

Red River Subs is, as of the filing of this case, three months in arrears in its rental payments to the Landlord, pursuant to a commercial lease agreement (the "Lease," a copy of which is attached hereto as Exhibit A, with the most recent extension thereof being attached hereto as Exhibit B). While these obligations represent a pre-petition debt, any post-petition rent – which accrues at the rate of $2,551.60 per month – would invite an administrative claim against the Debtor's estate. Red River Subs is keen to avoid such a claim and, equally, wishes to give the Landlord as much opportunity as possible to relet the premises and mitigate a claim that may ultimately be filed pursuant to Section 502(b)(6) of Title 11 of the United States Code.[1]

For these reasons, and as extrapolated upon *infra*, Red River Subs believes it prudent to reject the Lease, and seeks to do so promptly so as to avoid any argument that post-petition obligations accrue in the nature of an administrative expense claim.[2]

II.     **Standard**

The Bankruptcy Code allows, *inter alia*, "…the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

---

[1] As one bankruptcy court recently observed, "[u]ntil an executory contract is assumed or rejected, the debtor's obligations under the contract are an administrative expense claim of the estate." *In re Parking Mgmt., Inc.*, 620 B.R. 544, 553 (Bankr. D. Md. 2020) (citing 11 U.S.C . § 365(d)(5)).

[2] The current extension of the Lease runs through November 30, 2024. So while there is not an inordinate period of time remaining, the residue of the term is still of a time sufficient to allow the Landlord a genuine opportunity to mitigate damages.

In assessing a request to reject an unexpired lease, courts traditionally look to the exercise, *vel non*, of the trustee's (or, as it is, debtor-in-possession's) "business judgment." *See, e.g.*, *In re Noranda Aluminum, Inc.*, 549 B.R. 725, 727–28 (Bankr. E.D. Mo. 2016) ("In the Eighth Circuit, the business judgment test is used 'in deciding whether to approve a trustee's motion to assume, reject, or assign an unexpired lease or executory contract, [which] entails a determination that the transaction is in the best interest of the estate.' ") (quoting *Four B. Corp. v. Food Barn Stores, Inc., (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n. 16 (8th Cir. 1997); citing *Crystalin, L.L.C. v. Selma Props., Inc. (In re Crystalin, L.L.C.)*, 293 B.R. 455, 463–64 (8th Cir. BAP 2003)).

As noted by the *Noranda* Court, "[t]he business judgment test 'is not an onerous one and does not require the bankruptcy court to place 'itself in the position of the trustee or debtor-in-possession and determining whether assuming the [lease] would be a good business decision or a bad one.' ' " *Noranda*, 549 B.R. at 728 (quoting *Crystalin*, 293 B.R. at 464 (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir.1993))).

The test has two prongs. First, ". . .the assumption of a lease must be in the 'exercise of a sound business judgment' showing benefit to the estate." *Crystalin*, 293 B.R. at 464 (quoting *In re Global Int'l Airways*, 35 B.R. 881, 886 (Bankr. W.D. Mo. 1983)). And, second, assuming a showing of sound business judgment is made, "the bankruptcy court should not interfere with the trustee or debtor-in-possession's business judgment 'except upon a finding of bad faith or gross abuse of their 'business discretion.' " *Crystalin*, 293 B.R. at 464 (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

### III.     Argument: The Lease Should Be Rejected

Quite simply, the Debtor is closing its location in Bismarck, realizing that specific restaurant cannot be operated profitably, and there is accordingly no reason for the Debtor to remain obligated under the Lease. The question thusly is not if the Debtor ought to assume the Lease or reject the Lease but, rather, if the Debtor ought to (i) assume the Lease for purposes of assignment or (ii) reject the Lease outright. The Debtor is cognizant of the unliquidated and contingent claim the Landlord may have herein pursuant to Section 502(b)(6) of the Bankruptcy Code, by virtue of rejection, but the Debtor is also confident the Landlord will expend all commercially reasonable efforts to relet the demised premises and mitigate that claim before it can be asserted. *See, e.g.*, *In re Racing Services, Inc.*, 595 B.R. 334, 382 (Bankr. D.N.D. 2018) ("North Dakota law 'imposes an obligation on injured parties to take reasonable steps to limit their damages if they can do so through reasonable exertion or at a trifling expense.' ") (quoting *Peterbilt of Fargo, Inc. v. Red River Trucking, LLC*, 864 N.W.2d 276, 281-82 (N.D. 2015)).

Since there are only nine months remaining on the Lease, however, any efforts to assume the obligation for purposes of assignment would likely fetch little – if any – value to the Debtor's estate. Red River Subs does not feign to have undertaken an extensive market analysis to ascertain if the Lease obligation is sufficiently below-market as to be potentially attractive to suitors. However, the Debtor is also cognizant that endeavoring to assume-and-assign the Lease would likely invite the estate to incur attorneys' fees and Subchapter V trustee's fees assuredly equal to – if not greater than – any premium a third party might be willing to pay for the right to step into the Debtor's proverbial shoes.

This sound exercise of business judgment leaves only the second question, under *Crystalin*, of whether there is bad faith or a gross abuse of discretion. The Debtor respectfully submits that

neither such scenario is instantly extant. The Debtor has no relationship with the Landlord, aside from that of being a tenant, and neither the Debtor nor its principal stand to gain anything monetarily by virtue of rejecting the Lease (aside from being relieved of administrative obligations herein). Similarly, Red River Subs would respectfully submit that rejecting the lease of a closed restaurant does not nearly invite an abuse of discretion.

For want of ambiguity, the Lease is for exquisite space, in an exquisite location, and the Debtor fully trusts the Landlord will expend all reasonable efforts to promptly relet the premises. This rejection is not a free ticket for the Landlord to file a claim for all that remains due on the Lease.[3] Should the Landlord do so, such will be met with vociferous objection from the Debtor. But this rejection is an acknowledgement that the Landlord is exceedingly well suited to find a new tenant who can make more economically responsible use of the subject space, and a vote of confidence in the Landlord being able to efficiently and expeditiously honor its legal obligation to do so.

## IV.  Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) enter an order rejecting the Lease; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

---

[3] *See, e.g.*, *Parking Mgmt.*, 620 B.R. at 553 ("The rejection or assumption of an executory contract or unexpired lease does not determine whether the nondebtor party holds a claim; it establishes the nature of the claim as either 'a pre-petition obligation of the debtor or as an administrative expense entitled to the highest priority.'") (quoting *In re Stewart Foods, Inc.*, 64 F.3d 141, 144 (4th Cir. 1995) (citing *Leasing Serv. Corp. v. First Tenn. Bank Nat'l Assoc.*, 826 F.2d 434, 437 (6th Cir. 1987))).

Respectfully Submitted,

Dated: January 14, 2024                    By:    /s/ Maurice B. VerStandig
                                                  Maurice B. VerStandig, Esq.
                                                  The Dakota Bankruptcy Firm
                                                  1630 1st Avenue N
                                                  Suite B PMB 24
                                                  Fargo, North Dakota 58102-4246
                                                  Phone: (701) 394-3215
                                                  mac@dakotabankruptcy.com
                                                  *Proposed Counsel for the Debtor*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January, 2024, a copy of the foregoing was

served electronically upon filing via the ECF system.


                                                  /s/ Maurice B. VerStandig
                                                  Maurice B. VerStandig