## LEASE AGREEMENT

THIS LEASE, made this 13 day of November, 2009, by **Concepts on 9th, LLC, LANDLORD**, 931 South 9th Street, Bismarck, North Dakota, and **Red River Subs, Inc. 1708 S. 1st Street, Willmar, MN 56201**, individually, TENANT.

1. **PREMISES.** In consideration of the obligation of TENANT to pay rent as herein provided, and in consideration of the other terms, provisions, and covenants hereof, LANDLORD hereby demises and leases to TENANT, and TENANT hereby takes from LANDLORD, the following-described premises situated within the City of Bismarck, County of Burleigh, and State of North Dakota:

See Attachment A for depiction of premises, which shall constitute approximately 1808 sq. feet of retail space within the building located at 931 South 9th Street, Bismarck, ND (Dimensions per contractor: 39.25' X 47.08' = 1847.89 sq. ft. – 40.4 sq. ft. fire closet for sprinkler equipment = 1807.51 sq. ft.) hereinafter referred to as the Premises, together with all rights, privileges, easements, appurtenances, and amenities belonging to or in any way pertaining to the said Premises, together with the buildings and other improvements erected upon said Premises.

2. **TERM.** This Lease is binding upon the parties upon its execution and the initial term of this Lease shall be for a period of five (5) years, commencing on December 1, 2009, and ending November 30, 2014.

3. **RENT.** TENANT shall pay LANDLORD as rent for said Premises the sum of $14.00 per square foot, amounting to a monthly payment of $2109.00, payable upon the execution of this Lease for the first month's rent and on the first day of each month commencing one month after commencement and continuing thereafter during the term of this Lease. TENANT also covenants to pay, from time to time as provided in this Lease, as additional rent: all other amounts and obligations which TENANT assumes or agrees to pay under this Lease, together with interest at the rate of 6% per annum on such foregoing amounts and obligations that are payable to LANDLORD but that are not paid within twenty (20) days after receipt of an invoice from LANDLORD until the payment thereof. TENANT shall pay interest at the rate of 6% per annum on all installments of the rent that are not paid on the due date, from the due date until paid. If TENANT fails to pay any such additional rent, LANDLORD shall have all the rights, powers and remedies provided for in this Lease or at law or in equity or otherwise in a case of non-payment of rent. Also at time of execution of this Lease, TENANT shall pay $2109.00 as a security deposit, which shall be held by LANDLORD to insure the timely performance of the terms of this Lease, and returned to TENANT, with interest, less any set off for damages to the Premises, within 3 weeks of termination of this Lease.

All rent shall be absolutely net to LANDLORD so that this Lease shall yield to LANDLORD the full amount of the monthly rent throughout the Lease term without deduction. All rents shall be paid to LANDLORD without notice, demand, counterclaim, set-off, deduction or defense, and nothing, shall suspend, defer, diminish, abate or reduce any rent, except as (i) otherwise specifically provided in this Lease, and (ii) allowed by North Dakota law.

4. **USE**. The Premises shall be used only as an eating establishment with delivery and catering, and all related activities, and for no other purposes. The LANDLORD covenants that the Premises is zoned for the TENANT'S proposed use. LANDLORD acknowledges that there are no limitations to hours of operation by TENANT.

4A. **EXCLUSIVITY**. LANDLORD covenants and agrees that it shall not directly or indirectly sell, lease or rent any property located within or on Landlord's Property to any person or entity whose business is the operation of a sandwich-type shop, nor will Landlord cause, suffer or permit any tenant or occupant of Landlord's Property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation primarily engaged in any such business.

5. **TAXES**. The LANDLORD shall be responsible for the payment of all general real property taxes and special assessments payable on the Premises during the Lease term. TENANT is responsible for all other taxes.

6. **INSURANCE**. The TENANT, at its expense, shall obtain and maintain in full force and effect with an insurance company approved to do business in North Dakota, General Liability coverage with minimum policy limits of $1,000,000 each occurrence and $2,000,000 aggregate naming LANDLORD as additional insured including the waiver of subrogation provision favoring the LANDLORD. TENANT shall also obtain "Special" form property coverage to include leasehold improvements and betterments plus Tenant's business personal property. LANDLORD shall be included as additional interest as their interest may appear in leasehold improvements. The insurance shall provide statutory cancellation provisions notifying the LANDLORD of cancellation and/or reduction or material change in coverage. Evidence of said liability and property insurance must be provided to the LANDLORD prior to occupancy of the Premises.

7. **UTILITIES**. TENANT shall pay for all utilities including electricity, natural gas, garbage and trash removal, water, sewer, telephone, cable, and internet services, which are separately metered and/or billed. The LANDLORD shall pay for the outside lighting.

8. **MAINTENANCE AND REPAIR**.

(a) BY TENANT. TENANT, at all times during the Lease term, and at the TENANT'S expense, shall keep the Premises and all improvements now or hereafter located thereon, and all facilities thereon, and all appurtenances to the Premises in good repair, including the adjoining sidewalk, which shall be kept in a good and clean order. Tenant's maintenance shall include but not be limited to, painting, glass windows and doors, doors, door closing and locking mechanisms, pest control services, the repair of any damage resulting from movement of furniture, fixtures, merchandise or supplies, and

2

all floor coverings. TENANT shall further operate its business in the Premises in such a manner as may be required by legal requirements and insurance requirements, which relate to or control the Premises.

   (b)   BY LANDLORD. Landlord shall, at its cost, maintain and repair in a reasonable working condition the entire parking lot area, and the exterior and structural (including painting) walls, foundation, exterior façade, subfloor, roof, and other structural components of the building in which the Premises is located, and all mechanical systems, including the plumbing, heating, ventilating, air conditioning, mechanical, electrical systems, installations and facilities of the Premises, and all utility installations, wiring, conduit and plumbing that provide water, sewer, electricity, telephone and gas service to the Premises. If Landlord fails to complete a repair or maintenance within ten (10) days after Tenant's notice, unless the nature of the repair needed is such that more than ten (10) days are reasonably required to make such repair, and Landlord fails to commence the repair within the ten (10) day period or fails to thereafter diligently complete the repair within a reasonable time, Tenant may, but without obligation to do so and in addition to any other remedy, make the repair or perform the work, and charge the reasonable expenses thereof against the base rent next due under this Lease. Landlord's work shall include repairs (including replacements) of the building systems (including the plumbing, heating, ventilating, air conditioning, mechanical, electrical systems and installations and facilities of the Premises), the roof (including keeping same watertight) and structural components of the building as necessary to enable Tenant to occupy the Premises for the purposes of this Lease, except (a) such repairs as may be required by reason of the negligence or willful misconduct of TENANT, and (b) the TENANT shall make all necessary and appropriate repairs for glass replacement on the Premises. The LANDLORD shall be responsible for snow removal from in front of the sidewalk and around the Premises and from the parking lot areas. However, the TENANT shall be responsible for its pro-rata share of the total costs of snow removal. Pro-rata share is a fraction where the numerator is the square footage of the Premises divided by the total square footage of the building in which the Premises is located. In no event will TENANT'S costs for snow removal exceed one-thousand dollars ($1,000.00) per winter season. LANDLORD will use all reasonable efforts to minimize disruption of TENANT'S business caused by such activities, but inconveniences normally incident to such activities shall not be deemed an eviction of TENANT or a violation of LANDLORD'S obligations.

   9.   **LEASEHOLD IMPROVEMENTS ALTERATIONS AND ADDITIONS.** Title to all additions, repairs, replacements, and improvements made during the Lease term and any renewal thereof, forthwith shall vest in the LANDLORD, and the improvements, additions, repairs and replacements shall be and become the sole and absolute property of the LANDLORD without any obligation of payment by LANDLORD therefor. The TENANT shall not make any alterations, additions or improvements to the Premises without the prior consent of the LANDLORD, which shall not be unreasonably withheld, and all alterations made by TENANT will be paid by TENANT including those necessary to comply with city/state and federal statutes

3

and rules.

10. **LIENS.** The TENANT shall not directly or indirectly create or permit to be created or to remain and shall discharge, any mortgage, lien, security interest, encumbrance, or charge on, pledge, or any retention agreement with respect to the Premises.

If in connection with any work being performed by or for the TENANT in connection with any material being furnished to the TENANT, any mechanic's lien or other lien or charge shall be filed or made against the Premises or if any such lien or charge shall be filed or made against the LANDLORD, then TENANT, at TENANT'S expense, within thirty (30) days after such lien or charge shall have been filed or made, shall cause the same to be cancelled and discharged of record by payment, or filing a bond or otherwise. TENANT shall promptly and diligently defend any suit, action or proceeding which may be brought for the enforcement of such lien or charge; shall satisfy and discharge any judgment entered therein within ten (10) days from entry of such judgment by payment thereof or filing a bond or otherwise; and on demand, shall pay all damages, costs and expenses, including reasonable attorney's fees, suffered or incurred by LANDLORD in connection therewith.

Nothing contained in this Lease shall constitute any consent or request by LANDLORD, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect to the Premises or any part thereof nor is giving TENANT any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any material or other property in any fashion that would permit the filing or making of any lien or claim against the LANDLORD or the Premises.

11. **RIGHT OF ENTRY.** LANDLORD and LANDLORD'S agents and representatives shall have the right to enter and inspect the Premises from time to time during business hours upon reasonable notice based upon the circumstances, and in a manner which is reasonably designed to minimize any interference with TENANT'S business operations, for the purpose of ascertaining the condition of the Premises or in order to make such repairs as may be required to be made from time to time by LANDLORD under the terms of this Lease.

12. **ASSIGNMENT OR SUBLETTING.** The TENANT shall not have the right to assign or sublet the whole or any part of this Lease or the Premises without the prior written consent of LANDLORD. TENANT may help secure a replacement tenant that upon approval of the LANDLORD and subsequent execution of a lease by the new tenant and LANDLORD, the TENANT'S lease terminates. LANDLORD will independently consent to assignment of this Lease to FRANCHISOR (E&G Franchises) according to Article 13 of the Franchise Agreement.

13. **DAMAGE/DESTRUCTION OF THE PREMISES.** If there is any material damage to or destruction of the Premises or any part thereof, TENANT promptly shall give written notice to the LANDLORD describing the nature and extent of the damage or destruction. The TENANT, whether or not there are insurance proceeds on account of the damage or destruction, promptly shall commence and complete the restoration, replacement or rebuilding of

4

the interior of the Premises as nearly as possible to its condition and character immediately prior to the damage or destruction if the damage would be required to be repaired by TENANT under paragraph 8 of this lease. The LANDLORD shall be responsible for such rebuilding and restoration as set forth in paragraph 8. Pending completion of such restoration, the party responsible for repairs under paragraph 8 shall perform all temporary work and take all such actions as may be necessary or desirable to protect and preserve the Premises. To the extent that the Premises is rendered untenantable as determined by LANDLORD and TENANT, rent shall abate except in the event of negligence of TENANT, TENANT'S employees or agents, in which event there shall be no abatement of rent. In the event the damage shall be so extensive that the LANDLORD shall decide not to repair or rebuild, this Lease shall be terminated as of the date of such damage by written notice from the LANDLORD to the TENANT and rent shall be adjusted to the date of such damage, and TENANT shall thereupon promptly vacate the Premises.

14. **MUTUAL RELEASE OF SUBROGATION**. Each party hereby releases the other from any claims for recovery for any loss or damage to any of its property which is insured under valid and collectible insurance policies to the extent of any recovery collectible under such insurance. This waiver shall apply only when permitted by the applicable policy or policies of insurance.

15. **HOLD OVER**. Should TENANT, or any of its successors in interest, hold over the Premises or any part thereof, after the expiration of the term of this Lease, unless otherwise agreed in writing, such holding over shall constitute and be construed as a tenancy from month to month only. All obligations and duties imposed by this Lease upon the LANDLORD and TENANT shall remain the same during any such period of occupancy.

16. **EVENT OF DEFAULT**. The following events shall be deemed to be events of default by TENANT under this lease:

   a. TENANT shall fail to pay any installment of rent hereby required and such failure shall continue for a period of ten (10) days after written demand therefor shall have been made by LANDLORD.
   b. TENANT shall fail to comply with any term, provision, or covenant of this Lease, other than the payment of rent, and shall not cure such failure or make a reasonable effort to cure such failure, within ten (10) days after written notice thereof to TENANT.

17. **REPOSSESSION**. If an event of default shall have occurred and is not cured by TENANT, LANDLORD may enter upon and repossess the Premises or any part thereof according to North Dakota law.

18. **PARKING**. The LANDLORD, to insure the availability of parking space for the customers/clients of all tenants, shall have the authority to limit parking in the spaces along the front of the building to customers/clients only. If the LANDLORD exercises this option, TENANT'S employees will be given a specific area in which to park (restricted area) and should

they not park in the restricted area they will be subject to having their vehicles impounded. Once notice is given by the LANDLORD to the TENANT that this restriction has been placed in effect it will be the responsibility of the TENANT to inform its employees of the parking restriction and the restricted area where they are required to park. There shall be no parking of vehicles along the north side of the building.

19. **HEIRS, SUCCESSORS AND ASSIGNS.** This Lease shall be binding upon and inure to the benefit of the successors of the parties hereto and the assigns of the LANDLORD.

20. **SURVIVAL OF TENANT'S OBLIGATIONS AND DAMAGES.** No termination of the Lease term pursuant to this Lease by operation of law or otherwise (except as expressly provided herein) and no repossession of the Premises or any part thereof pursuant to this Lease or otherwise shall relieve TENANT of TENANT'S obligations and liabilities hereunder all of which shall survive such expiration, termination or repossession.

21. **WAIVER.** No failure by LANDLORD or TENANT to insist upon the strict performance of and in compliance with any term, covenant or condition hereof or to exercise or enforce any right, power, or remedy consequent upon a breach thereof, and no submission by TENANT or acceptance by LANDLORD of full or partial rent payment during the continuance of any such breach, shall constitute a waiver of any such breach or of any such term, covenant or condition. No waiver of any breach of any term, covenant or condition of this Lease shall affect or alter this Lease, which shall continue in full force and effect, the respective rights, powers or remedies of LANDLORD or TENANT with respect to any other then existing or subsequent breach.

22. **END OF LEASE TERM.** Upon the expiration or termination of the Lease, TENANT shall quit, surrender and deliver to LANDLORD the Premises with the improvements thereon in good order and condition, ordinary wear and tear excepted, and shall remove all TENANT'S equipment and Trade Fixtures therefrom. For purposes of this Lease, "Trade Fixtures" shall mean only those items of removable property owned or leased by TENANT and any future replacements or substitutions of such property, but shall not include any other fixtures on the Premises on the date of this Lease or any additions or replacements. Items shall be removable only if they can be removed, reassembled and reused without substantial damage or destruction. TENANT shall be entitled to substitute, exchange and replace TENANT'S trade fixtures from time to time without the prior consent of LANDLORD. TENANT shall promptly remove all of TENANT'S trade fixtures upon expiration or termination of this Lease.

23. **NOTICES.** All notices, demands, elections and other communications desired or required to be delivered or given under this Lease shall be in writing and shall be deemed to have been delivered and given when, 1) delivered by hand; or 2) on the third business day after the same has been mailed by first class registered or certified mail, postage prepaid, enclosed in a securely sealed envelope addressed to the party to which the same is to be delivered or given at such party's address as set forth in this Lease or at such other address as said party shall have designated in writing.

6

24. **RIGHT TO RENEW.** TENANT shall have two consecutive options to renew this Lease. The first option shall be for a term of 5 years at $15.40 per square foot for a payment of $2,320.00 per month. The second option term shall be a term of 5 years at $16.94 per square foot for a payment of $2,551.60 per month. TENANT must provide LANDLORD a 90 day advance written notice indicating intention to exercise its right. This right is contingent upon TENANT being in substantial compliance with all terms and conditions of this Lease. All other terms and conditions of the Lease will remain the same during any renewal term.

25. **MISCELLANEOUS.** All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable law and are intended to be limited to the extent necessary so that they will not render this Lease invalid, unenforceable, or not entitled to be recorded under any applicable law. If any term, covenant or condition of this Lease shall be held to be invalid, illegal or unenforceable, the validity of the other terms, covenants and conditions of this Lease shall in no way be affected thereby. If any interest provided for herein shall be deemed to be in excess of the maximum amount permitted under applicable law, TENANT shall be deemed to be entitled to the maximum amount permitted under applicable law. The headings in this Lease are for convenience only. The singular shall include the plural, the plural the singular, as appropriate. This Lease shall be governed by and construed in accordance with the laws of the State of North Dakota.

26. **SIGNS.** TENANT shall be permitted to place and maintain on the exterior of the Premises or building in which the Premises is located provided the same has been approved by all controlling governmental authorities with jurisdiction over such matters and subject to the approval of the LANDLORD said approval shall not be unreasonably withheld. TENANT will, at its sole cost and expense, install and maintain any such sign, decoration, lettering, advertising matter, or other thing as may be permitted in good condition and repair at all times. TENANT must remove all signs upon termination of this Lease or termination of TENANT'S right to occupy the Premises.

27. **TENANT'S RIGHTS.** Notwithstanding anything herein to the contrary in the Lease, TENANT shall have the right at any time and from time to time, without the LANDLORD'S consent, to convey, assign, transfer, grant a security interest in or otherwise encumber its trade fixtures or other personal property in the Premises, including any replacement or extensions thereof, to any lender or creditor of TENANT.

28. **LANDLORD'S REPRESENTATIONS AND WARRANTIES.** LANDLORD hereby represents and warrants to TENANT that (1) the Premises are in good condition and repair; (2) the mechanical systems servicing the Premises (including the plumbing, heating, ventilating, air conditioning, mechanical, electrical systems, installations and facilities of the Premises) are in good condition and working order; (3) the Premises and the building are, in compliance with all applicable zoning, building and land use laws and all other applicable federal, state and local laws, regulations, rules and ordinances currently in effect, including

7

without limitation the Americans with Disabilities Act and all government measures regulating or enforcing public access, occupational, health or safety standards for employers, employees, landlords and tenants; and (4) Landlord has not received any notice or other communication, written or oral, from any governmental authority indicating that either the Premises or its use is not in compliance with any law, ordinance or regulation.

IN WITNESS WHEREOF, this lease has been duly executed as of this 13th day of November, 2009.

[Notary stamp: JOSEPH J CICHY, Notary Public, State of North Dakota, My Commission Expires April 2, 2013]

CONCEPTS ON 9TH, LLC
LANDLORD

By: _____
Jerry Harmon, President

STATE OF NORTH DAKOTA )
                      )ss.
COUNTY OF BURLEIGH    )

On this 13th day of November, 2009, before me personally appeared Jerry Harmon, known to me to be the President of CONCEPTS ON 9TH, LLC, that is described in and who executed the within and foregoing instrument and acknowledged to me that he executed the same on behalf of CONCEPTS ON 9TH, LLC.

_____
Notary Public

IN WITNESS WHEREOF, this lease has been duly executed as of this 16th day of November, 2009.

RED RIVER SUBS, INC.
TENANT

By: _____
Its: President

STATE OF Minnesota )
                   )ss.
COUNTY OF Kandiyohi )

8

On this 16th day of November, 2009, before me personally appeared Joe Cody known to me to be the President of **RED RIVER SUBS, INC.** that is described in and who executed the within and foregoing instrument and acknowledged to me that he executed the same on behalf of **RED RIVER SUBS, INC.**

Janet Wulff
Notary Public

JANET WULFF
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2015

9

## ATTACHMENT A

Depiction of Premises



## LANDLORD'S CONSENT
## TO ASSIGNMENT OF LEASE

The undersigned landlord (the "Landlord") hereby consents to the assignment by _Red River Subs Inc._ _____ (the "Developer") of its right, title and interest in the premises lease dated _November 13, 2009_ between the Landlord and the Developer (the "Lease") to E & G Franchise Systems, Inc. (the "Company") pursuant to a Franchise Agreement between the Company and the Developer dated _____, 200__ (the "Agreement"), and agrees with the Company as follows:

1. If the Developer defaults under the Agreement, then the Company or its designee may assume, enforce and perform the obligations of the Lease with the same force and effect as if assumed, enforced and performed by the Developer. The Landlord will accept performance by the Company or its designee in satisfaction of the Developer's future obligations under the Lease.

2. The Landlord will not terminate the Lease on account of any default of the Developer thereunder without written notice to the Company and without first providing to the Company a reasonable opportunity, but not less than 30 days, to: (i) cause the Developer to cure the default; or (ii) declare the Developer in default under the Agreement and exercise its rights under the Assignment of Lease provisions of the Agreement. If the Company elects to exercise its rights under the Assignment, then the Landlord agrees not to terminate the Lease so long as the Company or its designee agrees, within 30 days after the date the Company gives written notice to the Landlord of its election to exercise its rights under this Assignment, to perform the future obligations of the Developer under the Lease. However, nothing herein will require the Company to cure any default of the Developer under the Lease, but only gives the Company the option to assume the Developer's future rights and obligations under the Lease.

3. The Landlord hereby represents and warrants to the Company that: (i) the premises Lease is a valid enforceable agreement; (ii) there has been no prior assignment of the Lease of which the Landlord has notice or is aware; (iii) neither the Landlord nor the Developer is in default under the Lease; and (iv) all covenants, conditions and agreements have been performed as required therein except those not due to be performed until after the date hereof.

Date: _11-17_, 200_9_

LANDLORD

_____
Legal Name of Landlord

By: _____

Its: _____
(Title)

GP:1675226 v2

F-54

931 on 9th, LLC
4007 State St
Bismarck, ND 58503
701-391-9911
bob@dwiz.com

October 31, 2014

To Whom It May Concern:

This letter is to inform you that my investment group, 931 on 9th, LLC has purchased the property at 931 S 9th St in Bismarck effective October 31, 2014. As President and Managing Partner, I would like to extend my appreciation for being a past, present and future tenant in this building.

You can expect most aspects of the property to remain the same as they have been. We have several other properties in the Bismarck-Mandan area and take great pride in making them visually appealing, structurally sound and a profitable location for all parties involved. My goal is to always assist in using our location and building to get great results for you and your business.

I look forward to working with you and hearing what has been working well for you in regard to the property and what you would like to see improved upon. If any issues or emergencies arise please do not hesitate to call me on my cell phone at **701-391-9911** or send an email to **bob@dwiz.com**. The following is the location of my office and where the rent checks and other correspondence should be sent. Thank you in advance for your patience during this transition.

**931 on 9th, LLC**
**4007 State St**
**Bismarck, ND 58503**

Sincerely,

*[signature]*

Bob Vander Vorst
President/Managing Partner

**Concepts on 9th LLC**
4150 149th Ave NW
Bismarck
701-471-3937

October 31, 2014

To Whom It May Concern:

As President of Galleria LLC, I am writing to inform you that the property was recently sold to 931 on 9th LLC. I am assigning all existing leases and amendments to the new ownership group. I would like to thank you for being a great Tenant.

All future building inquires and rent checks should be forwarded to:

**931 on 9th LLC**
**4007 States Street**
**Bismarck, ND 58503**
**701-391-9911**

Sincerely.

*[signature]*   10-31-14

Jerry Harmon
Presidnet