IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30010 |
| | ) | (Chapter 11) |
| RED RIVER SUBS, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

### MOTION TO STAY *RED RIVER REFRIGERATION V. BEEDY*

Comes now Red River Subs, Inc. ("Red River Subs" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 362 and 105 of Title 11 of the United States Code, and moves this Honorable Court to stay the matter of *Red River Refrigeration, Inc. v. Beedy*, Case No. 09-2024-SC-16, pending in the Small Claims Court of Cass County, North Dakota (the "State Court Case"), and in support thereof states as follows:

I.   **Introduction**

While not the focus of this bankruptcy or the event that invited Red River Subs to seek Chapter 11 relief, the Debtor has a now-longstanding dispute with Red River Refrigeration, Inc. ("RRRI")[1] concerning shoddy work that was performed in the Debtor's Moorhead location and an insurance claim stemming therefrom. RRRI elected to formalize this dispute by filing a small claims action, approximately nine days pre-petition, to recover funds allegedly due and owing pursuant to unpaid invoices issued to the Debtor. Problematically, however, RRRI did not sue the Debtor – in what genuinely appears to be an error, RRRI sued Todd Beedy ("Mr. Beedy"), the Debtor's principal and sole owner.

This creates an unusual paradigm whereby (i) the debt RRRI seeks to collect has been scheduled (albeit as disputed) in this case; (ii) Mr. Beedy's most logical defense to the State Court

---

[1] Despite both entities having the "Red River" nomenclature, the parties are unrelated.

1

Case is to note that it is the Debtor – not him individually – that was invoiced by RRRI; and (iii) in making such an argument – together with arguing the Debtor is an indispensable party and/or the proper party in interest – Mr. Beedy would almost assuredly run afoul of the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay").

Accordingly, and as extrapolated upon *infra*, this is the rare case where it is appropriate to extend the Automatic Stay to a non-debtor. Mr. Beedy does *not* seek *carte blanche* protection of the Automatic Stay, is not suggesting the Debtor's bankruptcy ought to be reason for him to cease paying his ordinary bills as they come due, and does not presently seek to apply the stay to any proceeding other than the State Court Case. But for this one proceeding, in this markedly narrow context, the stay should be extended to insulate Mr. Beedy.

**II.      Factual Background**

The following facts are largely premised upon RRRI's own filing in the State Court Case and, accordingly, are believed to be undisputed:

1. On or about January 4, 2024, RRRI filed the State Court Case. *See* Claim Affidavit, attached hereto as Exhibit A.

2. The State Court Case is putatively brought against Mr. Beedy. *Id.*

3. In the State Court Case, RRRI seeks $6,457.99 in damages. *Id.*

4. RRRI relies on four account statements in furtherance of the State Court Case: one for $1,831.55, addressed to "Erbert & Gerberts – 25th;" one for $1,610.41, addressed to "Erbert & Gerberts – MHD;" one for $531.70, addressed to Erbert & Gerberts – Broadway;" and one for $2,484.33, addressed to "Erbert & Gerberts – Bismarck." *Id.*

5. The foregoing four statements total $6,457.99 – the sum at issue in the State Court Case.

6. The Debtor is the sole entity operating an Erbert and Gerbert's franchise in Bismarck, Moorehead, and Fargo. *See* https://www.erbertandgerberts.com/locations/ (last accessed Jan. 14, 2024).

7. The State Court Case does not attach or reference any contract signed by Mr. Beedy in his personal capacity, nor does it attach any invoice or statement sent to Mr. Beedy (though he does, of course, receive items sent to the Debtor's four locations).

### III.  Argument: Any Alter Ego Claim is an Asset of the Estate

As noted *supra* and as extrapolated upon below, it genuinely appears RRRI has simply sued the wrong party, with Mr. Beedy not being the proper party in interest to a suit premised upon statements sent to the Debtor. However, even if, *arguendo*, the suit really is intended to be against Mr. Beedy, such would necessarily require some theory of alter ego liability. Any such claims belong exclusively to the Debtor's estate.

Title 11 of the United States Code (the "Bankruptcy Code") expressly reserves to the trustee (or, as here, the debtor in possession) the right to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title..." 11 U.S.C. § 544(b)(1). The Bankruptcy Code further provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" are an asset of the Debtor's estate. 11 U.S.C. § 541(a)(1).

These statutory frameworks create a paradigm whereby any alter ego claim is necessarily an asset of a debtor's estate, with creditors being barred – by the Automatic Stay – from pursuing such theories of relief:

> The alter ego theory is one that could be used by any creditor seeking to recover money, and the path to the principal's pockets must go through the debtor

3

> corporation. The Court is unable to hypothesize any set of circumstances in this case in which the principal's disregard of the corporate form would create a particularized injury to one creditor. Furthermore, no such creditor-specific claim has been raised in this case. Once the corporate form has been disregarded, any unpaid creditor could argue for piercing the corporate veil. In bankruptcy, if the alter ego claim is property of the estate, all creditors are barred from prosecuting such a claim by the automatic stay.

*In re Icarus Holdings, LLC.*, 290 B.R. 171, 179 (Bankr. M.D. Ga. 2002). *See also In re Port Morris Tile & Marble LP*, 645 B.R. 500, 512 (Bankr. S.D.N.Y. 2022) ("The right to pursue state law alter ego or veil-piercing claims against non-debtor parties may become the exclusive right of the trustee if the claims are of the type generally available to creditors.") (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700–701 (2d Cir. 1989); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 851–52 (Bankr. S.D.N.Y. 1994)).

To be sure, the Debtor genuinely does not believe there is an alter ego claim afoot instantly. No such claim is scheduled as an asset in this case and, especially as a franchisee, the Debtor rigorously maintains corporate formalities in a manner that would almost-necessarily negate the viability of any such claim. But even if, *arguendo*, Mr. Beedy were being sued in state court because RRRI believes he has personal liability under an alter ego theory, such would be enjoined by the Automatic Stay.

**IV.  Argument: The State Court Case Should be Against the Debtor**

The far more likely scenario is that RRRI is not endeavoring to prove a complex alter ego case in Small Claims Court but, rather, simply sued the wrong party. The putative creditor's filing is premised upon invoices sent to the Debtor, for work supposedly performed at the Debtor's location, and seeks payment for that work. Under just about any construct, it would seem RRRI is trying to recover money from the Debtor. And such militates in favor of staying the State Court Case.

4

As noted by the United States Bankruptcy Court for the Eastern District of Pennsylvania, "[t]he law is clear that in some circumstances discretionary stays, beyond the scope of section 362, are appropriate and that a court's power to issue such injunctions stems from section 105 of the Code…" *In re Philadelphia Newspapers LLC,* 410 B.R. 404, 412 (Bankr. E.D. Pa. 2009). *See also In re Union Tr. Philadelphia, LLC*, 465 B.R. 765, 771 (Bankr. E.D. Pa. 2011) ("This Court may enjoin third-party proceedings pursuant to its Section 105 powers.") (citing *In re Kaplan*, 104 F.3d 589, 595 (3d Cir. 1997)).

While the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth and Tenth Circuits have all weighed in on the related – but somewhat dissimilar – question of non-debtor releases, the Eighth Circuit is yet to do so. *See* M. VerStandig, *Senate Legislation Looks to Upend Nondebtor Releases, Stays*, XL ABI Journal 10, 8, 55-56, October 2021. This Honorable Court appears to have only addressed a non-debtor stay in the prism of a passing reference to such an action not being pending, albeit without any verbiage suggesting such an action could not be brought. *See, e.g.*, *In re J & J Oilfield Services, Inc*., 2015 WL 3750143, at *13 (Bankr. D.N.D. 2015) ("Further, there is no guarantee that the Ottesens or Debtor will pursue a non-debtor stay against the Bank or that Debtor will be successful in this endeavor.").[2]

What is sought here, however, is *not* a non-debtor release or even a permanent non-debtor injunction. Red River Subs, rather, simply seeks to stay the State Court Case for the duration of this bankruptcy proceeding. If the Debtor proposes a longer stay or injunction, such would need to be accomplished through a plan of reorganization or an adversary proceeding. In the interim, and in light of the *sui generis* facts instantly at hand, a temporary stay is appropriate.

---

[2] It is reasonably expected the permissibility, *vel non*, of non-debtor releases will be addressed by the Supreme Court this term, in the matter of *Harrington v. Purdue Pharma L.P.*, Case No. 23-124 (2023).

5

For Mr. Beedy to defend the State Court Case, he would – almost necessarily – need to argue that any alleged debt is not his but, rather, is owed by the Debtor. He could do so by making an argument the Debtor is the proper party in interest, by asserting the Debtor is a necessary party that has not been joined, by filing a third party complaint against the Debtor, or through any number of other procedural steps.[3] And, in so doing, he would essentially be undertaking an "act to … assess … a claim against the debtor that arose before the commencement of the case…" 11 U.S.C. § 362(a)(6).

The claim of RRRI has been scheduled in this case and should be properly adjudicated in this case. If RRRI wishes to file a proof of claim herein, the Debtor will review the claim and, in turn, review whether to object to the claim. But the claim should not be litigated in state court, through the procedures attendant to a small claims case, simply because RRRI appears to have inadvertently sued the wrong party. And, worse, permitting the claim to move forward in state court will only invite a prism wherein the Debtor's own principal will be nearly compelled to assert an at-least-contingent claim against the Debtor.

### V.  Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) stay the State Court Case; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

---

[3] It is recognized that some of these may be procedures not ordinarily invoked in Small Claims Court.

Respectfully Submitted,

Dated: January 14, 2024  By:  /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of January, 2024, a copy of the foregoing was served electronically upon filing via the ECF system. A copy will also be sent via first class mail, postage prepaid, on Tuesday, January 16, 2024, to:

Red River Refrigeration, Inc.
160 8th Ave NW
West Fargo, ND 58078

and

Red River Refrigeration, Inc.
c/o Todd Moeller, Registered Agent
160 8th Ave NW
West Fargo, ND 58078

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7