IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30010 |
| | ) | (Chapter 11) |
| RED RIVER SUBS, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MOTION FOR LEAVE TO PAY**
**CLAIMS OF CRITICAL VENDORS**

Comes now Red River Subs, Inc. ("Red River Subs" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 105 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and moves this Honorable Court for leave to pay the pre-petition claims of critical vendors, and in support thereof state as follows:

**I.   Introduction**

The Debtor is in the restaurant business, which necessarily makes Red River Subs wholly reliant upon its food services vendor, Sysco, Inc. ("Sysco"), and its beverage vendor, Coca Cola Bottling Company High Country ("Coca Cola"). Without food and beverages, the Debtor cannot open for business. And without paying the ordinary course pre-petition obligations owed to Sysco and Coca Cola, the Debtor will not have food and beverages.

**II.   Standard**

Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor, "after notice and a hearing," to use or sell "property of the estate," outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Honorable Court, in turn, has broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

1

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

### III.     Argument: It is Necessary to Pay Critical Vendors

The Debtor cannot function without food and beverages. While there is some inventory on hand as this case begins, such will quickly dissipate as sandwiches are wrapped, soup is ordered, and drinks are consumed. And though the retro-chic décor of Erbert and Gerbert's is, no doubt, quite appealing, it stands to reason that customers are unlikely to fork over money for the privilege of sitting on barstools without sustenance upon which to nosh. The Debtor thusly views Sysco and Coca Cola as critical vendors.

As observed by the United States Bankruptcy Court for the Southern District of New York, a debtor is permitted to expend funds outside the ordinary course of business, provided such be pegged to some articulable business justification:

> A bankruptcy court is empowered pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under § 363(b).

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986); *In re Baldwin–United Corp.*, 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984)).

The Supreme Court of the United States has spoken, generally, to the rationale underlying the entry of critical vendor orders in connection with first day motions practice:

2

> Courts, for example, have approved "first-day" wage orders that allow payment of employees' prepetition wages, "critical vendor" orders that allow payment of essential suppliers' prepetition invoices, and "roll-ups" that allow lenders who continue financing the debtor to be paid first on their prepetition claims. In doing so, these courts have usually found that the distributions at issue would "enable a successful reorganization and make even the disfavored creditors better off."

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 574 n. 8 (3rd Cir. 2003); D. Baird, Elements of Bankruptcy 232–234 (6th ed. 2014); Roe & Tung, Breaking Bankruptcy Priority: How Rent–Seeking Upends the Creditors' Bargain, 99 Va. L. Rev. 1235, 1250–1264 (2013); quoting *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004); citing *Toibb v. Radloff*, 501 U.S. 157, 163–164 (1991)).

Here, the Debtor owes $7,689.56 to Coca Cola and $31,153.81 to Sysco. These are not antecedent debts; Red River Subs follows the industry norm of carrying a credit balance with its purveyors and making payments in arrears. So while the Debtor seeks authority to pay these pre-petition obligations, such will not occur by way of a singular payment (which the Debtor would not have funds sufficient to make) but, rather, through the ongoing maintenance of its net credit terms with Coca Cola and Sysco.[1]

Experience in this Honorable Court instructs that Coca Cola *will* cease making deliveries if pre-petition obligations are not timely paid, without regard to an entity being in bankruptcy. On at least two occasions in the preceding six months, Coca Cola took precisely such a course of action, in connection with debtors unrelated to Red River Subs, necessitating estates to incur attorneys' fees addressing the subject situations.

---

[1] Since the net credit terms simply take the form of bills payable anywhere between 30 and 90 days after issuance, the Debtor does not regard this as an effort to borrow money post-petition. By way of analogy, the two at-issue vendors are not substantively different than utility companies that invoice in arrears at the close of a month and request payment within 30 days of a bill's issuance.

While Sysco does not have a comparable track record, the Debtor believes Sysco will be unwilling to continue furnishing food and related goods if not timely paid. However, for the avoidance of ambiguity, the Debtor seeks herein the right to pay Sysco and Coca Cola, but not the obligation to pay Sysco and Coca Cola. If Sysco proves willing to make ongoing deliveries without payment of its pre-petition claim, Red River Subs will gladly forbear from making such payments and use the funds otherwise payable to Sysco to accumulate a small cash reserve during the pendency of this case.

Paying these obligations will permit the Debtor to continue operating in Chapter 11, without risking a disruption of critical supplies. This, in turn, invites a demonstrable benefit upon not merely Sysco and Coca Cola but, too, the entire creditor body *sub judice*, as the Debtor's continued operations will create the revenues requisite to fund a Subchapter V plan in this case.

**IV.    Conclusion**

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) permit, but not direct, the Debtor to pay the pre-petition claims of Sysco and Coca Cola; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 15, 2024     By:     /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Proposed Counsel for the Debtor*

*[Signature on Following Page]*

4

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of January, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig
