IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-30010 |
| | ) | (Chapter 11) |
| RED RIVER SUBS, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**REPORT PURSUANT TO 11 U.S.C. § 1188**

Comes now Red River Subs, Inc. (the "Debtor" or "Red River Subs"), by and through undersigned proposed counsel, pursuant to Section 1188 of Title 11 of the United States Code, and reports as follows:

**I.     Introduction**

At Erbert & Gerbert's, a turkey, bacon and ranch sub is known as the Nebula. Ham and roast beef goes by the alias of Comet Candy. And bacon, lettuce and tomato may be identified as a Giza BLT. These are fabulous sandwiches in their own right; in the context of a childhood storybook theme punctuated with extra-worldly references, they become part and parcel of a uniquely whimsical – and scrumptious – dining experience. A likely-apocryphal telling of history centers on John Montagu, the Fourth Earl of Sandwich, demanding meat be placed between pieces of bread, so as to offer him sustenance whilst gambling in the 1700s. Regardless of the tale's veracity, the sandwich has come a long way since the 18th century, and Red River Subs – North Dakota's only Erbert & Gerbert's franchisee – may be rightfully seen as being at the vanguard of the delectable artform.

None of the foregoing helps answer questions about secured debt service, rent deficiencies, or trade debts. But the innate quality – and correlative viability – of the Debtor's product is core to this case (even if Erbert & Gerbert's is well known for removing the core of its bread loafs).

1

Red River Subs has a proven, viable business model; it is a model successfully deployed by myriad other franchisees the nation over, one overseen by a savvy franchisor, and one founded upon the wholly-uncontroversial proposition that consumers enjoy a good sandwich – especially when accompanied by a retro-nifty sci-fi experience. And from that business model a reorganization can almost assuredly emerge.

## II.     Reorganizational Efforts

The Debtor's strategy entering this case is equally simple and open: shutter a failing store, cramdown the secured claim of a credit union loan to the value of supporting collateral, negotiate cure terms – and lease extensions – with landlords, seek the operational guidance of a topnotch franchisor, and emerge from Chapter 11 with three vibrant locations in a single metropolitan area. Red River Subs believes it is on track to achieve each of these goals.

The Debtor's Bismarck location has been closed, with the correlative lease rejected by order of this Honorable Court. This not only permits Red River Subs to shed the onus of an unprofitable locale but, too, permits the Debtor to acutely focus on its operations in the Fargo/Moorhead market. With the company being helmed by a local resident, this shift to regionally synergistic operations marks a critical step forward.

The largest creditor herein is First Community Credit Union, holding a claim north of $380,000.00. That claim is supported by less than $100,000.00 in collateral, however, and accordingly ripe for bifurcated treatment. The Debtor is working to assess the various asset values delineated in the schedules in this case and, in time, will look to either establish the size, *vel non*, of this claim through a plan of reorganization or a motion brought pursuant to Federal Rule of Bankruptcy Procedure 3012. The credit union is represented by an experienced North Dakota attorney (albeit not through a formal appearance, as of present), and meaningful conversations

2

have been engaged between counsel. A lot of work remains to be done on this front, but there exists cause for cautious optimism.

Of the Debtor's three landlords, two have appeared herein through counsel. While negotiations are still very much ongoing, it is reasonably believed deals can be reached with each of these property owners to (i) alleviate the financial burden of cure payments, allowing the Debtor to spread out such obligations over time and thereby avoiding the need to produce a large quantity of cash on the 60th day of this case; and (ii) extend the lease terms, to ensure a reorganized company has a secure physical footing for years to come (including through the duration of a plan of reorganization). Counsel for both such landlords have proven enormously helpful and cooperative; it is genuinely beneficial that both creditors not only chose to engage excellent lawyers with experience in this Honorable Court but, too, that the Debtor has long operated in a manner that promotes goodwill with its landlords. While the third landlord has not yet formally engaged counsel, party-to-party discussions have afforded reason to believe a comparable arrangement may well be ascertained in due course.

The franchisor has, too, gone to great lengths to aid Red River Subs in this proverbial hour of need. Not only has Erbert & Gerbert's also secured the services of a preeminent local attorney (the modest size of the Fargo Chapter 11 bar has, no doubt, proven an asset in this case) but, too, meaningfully taken to helping the Debtor with an operational review. It benefits the franchisor to have successful restaurants in this market and it benefits Red River Subs to glean the experience-based wisdom of the franchisor. The parties have been working in a collaborative manner since shortly after this case was docketed, and that bodes well for reorganization.

All the uplifting cheer of the foregoing notwithstanding, this is a case that will confront hard realities. The restaurant business is notoriously built upon thin margins, the cost of food has

3

skyrocketed over the past several years, and other purveyors of sandwiches exist in the marketplace. This is not going to be a case that invites a 100% plan. Depending on the deals that are cut with landlords (and approved by this Honorable Court), together with the ultimate size of the secured and priority burdens of the Debtor's estate, it is possible – if not rather likely – that payments to general unsecured creditors will be palpably meager. For Red River Subs to survive, a significant amount of debt will need to be wiped out. And, no matter how adorable the names of menu items, that is going to prove a difficult reality to be confronted as this case progresses toward a plan's proposal and hopeful confirmation.

          Respectfully Submitted,

Dated: February 20, 2024    By:   /s/ Maurice B. VerStandig
          Maurice B. VerStandig, Esq.
          The Dakota Bankruptcy Firm
          1630 1st Avenue N
          Suite B PMB 24
          Fargo, North Dakota 58102-4246
          Phone: (701) 394-3215
          mac@dakotabankruptcy.com
          *Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 20th day of February, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

          /s/ Maurice B. VerStandig
          Maurice B. VerStandig